Matthew A. Pequignot
Bar. No. 16062
Pequignot + Myers
2585 Ala Namahana Pkwy Unit 1007
Kilauea, Hawaii 96754
Phone: 202-328-1244
Facsimile: 202-328-2219
mpequignot@pmiplaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

NANJING 3H MEDICAL PRODUCTS CO., LTD.    )
No. 1, No. 5 ZhuShan Road    )
GaoChun Economic Development Zone    )
NanJing 211300 JiangSu Province, P.R. CHINA    )
    )
        Plaintiff,    )
    )    Case No.:
vs.    )
    )    **COMPLAINT**
    )
KT HEALTH, LLC    )
A Delaware limited liability company    )
584 East 1100 South, Suite 4    )
American Fork, Utah 84003    )
    )
        Defendant.    )

Plaintiff, Nanjing 3H Medical Products Co., Ltd. ("3H Medical"), brings this complaint ("Complaint") against Defendant KT Health, LLC ("KT Health") and alleges as follows:

<u>**NATURE OF THE CASE**</u>

1.      This is an action for Declaratory Judgment and other relief brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. A substantial actual controversy exists between the parties, based on *inter alia* actions taken by KT Health in the marketplace, including filing a complaint with Amazon.com, on or about June 18, 2024, alleging infringement of KT Health's design patent U.S. Patent No. D962,344 ("the '344 Patent") by 3H Medical's kinesiology tape products listed for sale on Amazon.com. As a result of KT Health's actions,

certain of 3H Medical's product listings were forcibly removed from Amazon.com. Due to KT Health's refusal to provide a covenant not to sue (or otherwise enforce) the '344 patent, or other KT Health patents, other product listings were removed from Amazon.com by 3H Medical to keep 3H Medical's seller account in good standing.

2.   Independently, employees of 3H Medical are the true inventors of KT Health's patents, which KT Health's proprietor, Reed Quinn ("Quinn"), unlawfully applied for in his own name after 3H Medical developed the products covered by the patents for Quinn to commercialize in the United States. As a result of Quinn's misappropriation of 3H Medical's intellectual property, 3H Medical has been unable to reap the financial benefits of the KT Health patents. Moreover, the existence of the patents as well as KT Health's marking therewith, which list Quinn as the sole inventor and KT Health as the sole owner, falsely inform the marketplace that KT Health is the only lawful seller of the kinesiology tape products covered by the patents. They likewise falsely inform that 3H Medical is an unlawful seller, putting 3H Medical at a competitive disadvantage.

3.   3H Medical seeks a declaration that it has not infringed, and is not infringing, any valid patent rights of KT Health in the '344 Patent, or other KT Health patent in the '344 patent family, due to 3H Medical's marketing and sale, use, or importing of its kinesiology tape products in or into the United States. 3H Medical seeks a judgment that the '344 Patent, and other KT Health patents in the '344 patent family, are invalid under 35 U.S.C. §101 *et seq.* 3H Medical also seeks a judgment that the '344 Patent, and other KT Health patents in the '344 patent family, are unenforceable due to KT Health's fraud or inequitable conduct during

prosecution thereof. In the alternative, 3H Medical seeks a judgment amending the inventorship of the KT Health patents under 35 U.S.C. §256 and amending the ownership of such patents to include 3H Medical.

**THE PARTIES**

4.     3H Medical is a corporation organized under the laws of China, with a principal place of business located at No. 1, No. 5 ZhuShan Road, GaoChun Economic Development Zone, NanJing 211300 JiangSu Province, P.R. China. 3H Medical is in the business of, among other things, making and selling kinesiology tape products.

5.     KT Health, upon information and belief, is a limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 584 East 1100 South, Suite 4, American Fork, Utah 84003. KT Health's registered agent is The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**JURISDICTION AND VENUE**

6.     3H Medical and KT Health are two of many competitors whose business includes making and selling kinesiology tape products online at Amazon.com.

7.     This action arises from KT Health's conduct in the marketplace, including its allegations on Amazon.com that 3H Medical is infringing the '344 Patent.

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, and 2201.

9.     This Court has personal jurisdiction over KT Health. KT Health advertises, distributes, and sells products to residents of the State of Maryland and in this judicial district.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Specifically, KT Health sells and offers for sale KT Health products at dozens of locations within Maryland. *See* below:

As other examples of its conduct directed at Maryland, KT Tape conducts taping demonstration seminars in Maryland, where product samples are distributed, and touts its partnership with Fleet Feet Sports Gaithersburg. 3H Medical likewise advertised and sold its products accused of infringement by KT Tape in Maryland. 3H Medical was also storing boxes of kinesiology tape products in Baltimore, Maryland - in Amazon warehouse BW12 - at the time KT Health accused 3H Medical of patent infringement. As a consequence of KT Health's accusations, and refusal to withdraw its infringement complaint, 3H Medical was forced to remove its products from Amazon's Baltimore warehouse facilities. *See* ¶¶ 53-60 *infra*. Thus, these facts considered collectively, KT Health is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Maryland long arm statute (Md. Cts. & Jud. Proc. Code Ann. § 6-103), resulting from KT Health's business contacts and intentional direction of activity in and to this forum. Further, at least a portion of the dispute alleged in this Complaint occurred in the State of Maryland and in this judicial district, and upon information and belief KT Health regularly conducts and solicits business, engages in other persistent courses of conduct, and derives substantial revenue from sales made to individuals in Maryland and in this judicial district.

10.     In light of KT Health's conduct, an actual, substantial controversy exists between 3H Medical and KT Health regarding, at a minimum, (i) whether 3H Medical is infringing any

valid patent right of KT Health; (ii) whether KT Health's conduct intentionally interfered with the contractual rights between 3H Medical and Amazon.com; (iii) whether KT Health unfairly competed with 3H Medical; (iv) whether KT Health should be enjoined from submitting further patent infringement notices against 3H Medical on Amazon.com; and (v) whether the inventorship and ownership of the KT Health patents should be corrected to include 3H Medical or its employees or representatives.

11.     This case is between diverse parties for a dispute with an amount in controversy exceeding $75,000, exclusive of interest and costs. 3H Medical is a citizen of China and KT Health is a citizen of Utah and Delaware.

12.     Venue properly lies in the District of Maryland, including pursuant to 28 U.S.C. § 1391.

13.     This Court may declare rights and other legal relations of the parties in this case under 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, because an actual and justiciable controversy exists concerning the rights of, and legal relations between, 3H Medical and KT Health.

## FACTUAL BACKGROUND

### I.     The History of the Products and Relationship of the Parties

14.     Kinesiology therapeutic tape is a generic term for a type of elastic therapeutic tape used to treat pain and disability from athletic injuries and other physical ailments. Substitute

5
**COMPLAINT**

generic terms for "kinesiology therapeutic tape" include "kinesiology tape," "elastic therapeutic tape," "kinesio tape," "k-tape," and "KT" (which is an abbreviation of or acronym for "kinesiology tape" and/or "kinesiology therapeutic").

15.     3H Medical has been in the business of innovating, developing, manufacturing, and commercializing kinesiology tape for more than two decades. 3H Medical's substantial business activities in this arena include manufacturing of kinesiology tape for third-party sellers as well as for the purpose of selling its own branded products, including on e-commerce platforms such as Amazon.com. 3H Medical also owns patents covering kinesiology tape products, including which pre-dated 3H Medical's first dealings with KT Health in the year 2008.

16.     During the year 2008, Reed Quinn ("Quinn"), named inventor on KT Health's portfolio of issued U.S. patents, approached 3H Medical knowing of 3H Medical's substantial experience in the kinesiology tape field.

17.     At the time Quinn approached 3H Medical, 3H Medical had long been manufacturing kinesiology tape products in the form of rectangles (of various dimensions) with rounded corners. Some of the tape products contained pre-cut centerlines and some did not. *See* schematics of exemplar products below:

**COMPLAINT**



18.     Tape products such as shown in ¶17 were sold by 3H Medical's customers pre-2008, such as under the brand Easytape™ and Spidertech. At the time, rolls of kinesiology tape were also manufactured by 3H Medical and otherwise known in the prior art.

19.     Quinn contacted 3H Medical, because Quinn wished to engage 3H Medical to manufacture a kinesiology tape product similar to what 3H Medical was already producing, except that the product would be customized with 'KT Health' logos and custom glue patterns. The tape product desired was otherwise intended to be in the form of rounded corner, rectangular tape strips sold in roll configurations.  Quinn represented that he thereafter intended to re-sell any products manufactured by 3H Medical, such as to retailers in the United States like Footlocker.

20.     3H Medical and Quinn worked together to produce samples of the product desired by Quinn, with Quinn providing comments and guidance pertaining to issues such as form and location of logos and print quality. 3H Medical, for its part, developed new manufacturing techniques to make the product, designed new glue patterns which were proposed to Quinn, and developed the design of the roll itself.

21.     After fully completed samples of the desired kinesiology tape products were prepared by 3H Medical, Quinn publicly displayed and distributed samples to physical trainers on or around November 11, 2008 or November 13, 2008, for the purpose of promoting the product in the marketplace. Public use of the samples was also photographed and videotaped for commercial promotional use, such as on KT Health's website.

22.     KT Health's website promoting the products produced by 3H Medical went 'live' – in other words, was published for access to the public worldwide - on around January 20, 2009.

23.     Although 3H Medical successfully produced the products requested by Quinn, including by conceiving of new manufacturing methods and by contributing important design elements, Quinn attempted to lure at least one key 3H Medical employee away from 3H Medical. Quinn thereafter ceased communications with 3H Medical and began applying for patent protection for the products and methods that 3H Medical designed, conceived, and reduced to practice.

24.     More specifically, on or around November 26, 2008, KT Health (via its predecessor company Lumos Inc.) began applying for patent protection for kinesiology tape rolls that 3H Medical designed and invented as well as for the process (i.e., method) of manufacture thereof. More specifically, Quinn has been named as the sole inventor on at least fifteen patent applications covering the inventions of 3H Medical since 2008.

## II.     The KT Health Patents

### The '344 Patent

25.     The '344 Patent was originally applied for as U.S. Patent Application No. 29/833,581 ("the '581 application") on April 5, 2022. Although the '581 application lists four prior patent applications in the *Related U.S. Application Data* section, KT Health admitted lack of entitlement to priority of such applications, by identifying the '581 application as a "continuation-in-part" (or "CIP"), indicating that the '581 application added new matter relative to its parent application. Accordingly, the '344 Patent is only entitled to its actual filing date, April 5, 2022, as its priority date.

26.     The face of the '344 patent indicates that the invention claimed therein was invented by Reed Quinn and that the patent is owned by KT Health.

27.     The '344 patent covers the ornamental design for a roll of pre-cut strips of kinesiology tape. One or more features covered by the '344 patent were invented by 3H Medical personnel and not Quinn.

**The '944 Patent**

28.     U.S. Design Patent No. D947,944 ("the '944 patent") was originally applied for as U.S. Patent Application No. 29/748,694 ("the '694 application") on August 31, 2020. Although the '694 application lists three prior patent applications in the *Related U.S. Application Data* section, KT Health admitted lack of entitlement to priority of such applications, by identifying the '694 application as a CIP, indicating that the '694 application added new matter relative to its parent application. Accordingly, the '944 Patent is only entitled to its actual filing date, August 31, 2020.

29.     The face of the '944 patent indicates that the invention claimed therein was invented by Reed Quinn and that the patent is owned by KT Health.

30.     The '944 patent covers the ornamental design for a roll of pre-cut strips of tape. One or more features covered by the '944 patent were invented by 3H Medical personnel and not Quinn.

**The '400 Patent**

31.     U.S. Design Patent No. D988,400 ("the '400 patent") was originally applied for as U.S. Patent Application No. 29/851,612 ("the '612 application") on August 30, 2022. Although the '612 application lists five prior patent applications in the *Related U.S. Application Data* section, KT Health admitted lack of entitlement to priority of such applications, by identifying the '612 application as a CIP, indicating that the '612 application added new matter relative to its parent application. Accordingly, the '400 Patent is only entitled to its actual filing date, August

30, 2022.

32.     The face of the '400 patent indicates that the invention claimed therein was invented by Reed Quinn and that the patent is owned by KT Health.

33.     The '400 patent covers the ornamental design for a roll of pre-cut strips of kinesiology tape. One or more features covered by the '400 patent were invented by 3H Medical personnel and not Quinn.

**The '420 Patent**

34.     U.S. Design Patent No. D1,011,420 ("the '420 patent") was originally applied for as U.S. Patent Application No. 29/851,600 ("the '600 application") on August 30, 2022. Although the '600 application lists five prior patent applications in the *Related U.S. Application Data* section, KT Health admitted lack of entitlement to priority of such applications, by identifying the '600 application as a CIP, indicating that the '600 application added new matter relative to its parent application. Accordingly, the '420 Patent is only entitled to its actual filing date, August 30, 2022.

35.     The face of the '420 patent indicates that the invention claimed therein was invented by Reed Quinn and that the patent is owned by KT Health.

**COMPLAINT**

36.     The '420 patent covers the ornamental design for a roll of pre-cut strips of kinesiology tape. One or more features covered by the '420 patent were invented by 3H Medical personnel and not Quinn.

**The '115 Patent**

37.     U.S. Patent No. 9,308,115 ("the '115 patent") was originally applied for as U.S. Patent Application No. 12/626,355 ("the '355 application") on November 25, 2009.

38.     The face of the '115 patent indicates that the invention claimed therein was invented by Reed Quinn and that the patent is owned by KT Health.

39.     The '115 patent is directed to body-adhesive kinesiology tape. One or more features covered by the '115 patent were invented by 3H Medical personnel and not Quinn.

**The '571 Patent**

40.     U.S. Patent No. 10,617,571 ("the '571 patent") was originally applied for as U.S. Patent Application No. 13/188,333 ("the '333 application") on July 21, 2011.

41.     The face of the '571 patent indicates that the invention claimed therein was invented by Reed Quinn and that the patent is owned by KT Health.

42.     The '571 patent is directed to pre-cut strips of kinesiology tape. One or more features covered by the '571 patent were invented by 3H Medical personnel and not Quinn.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**The '697 Patent**

43.     U.S. Patent No. 10,973,697 ("the '697 patent") was originally applied for as U.S. Patent Application No. 14/135,416 ("the '416 application") on December 19, 2013.

44.     The face of the '697 patent indicates that the invention claimed therein was invented by Reed Quinn and that the patent is owned by KT Health.

45.     The '697 patent is directed to pre-cut strips of kinesiology tape. One or more features covered by the '697 patent were invented by 3H Medical personnel and not Quinn.

46.     The '344, '944, '400, '420, '115, '571, and '697 patents are hereafter collectively referred to as the "KT Health patents".

**III.     KT Health's Fraud During Prosecution of the KT Health Patents**

47.     KT Health (itself, or through predecessor Lumos Inc., or through actions taken by Quinn as an individual) has committed inequitable conduct by *inter alia* 1) failing to disclose material prior art to the United States Patent and Trademark Office ("USPTO"); 2) failing to disclose its own prior public displays and prior sales of the invention to the USPTO; 3) failing to identify employees of 3H Medical as the proper inventor(s) on the subject applications for patent; and 4) improperly identifying Quinn as the inventor, or at least as the sole inventor of the subject applications for patent. All of the above was done with an intent to deceive the USPTO into granting the KT Health patents.

1

2        48.      Although Quinn's first patent application was filed on November 26, 2008, the

3   application was an informal provisional patent application, U.S. Provisional Patent Appl. No.

4   61/200,400. Design patent applications cannot claim priority to provisional patent applications.

5   *See* 35 U.S.C. §172. Moreover, KT Health's design patent applications do not purport to claim

6   priority to the '400 application. Consequently, none of KT Health's design patents are entitled to

7   the provisional application filing date. Instead, the earliest priority date that KT Health's design

8   patents (or applications) are entitled to is more than one year after Quinn's public display, use,

9   and distribution of kinesiology tape samples to physical trainers. Consequently, the public

10  display, use, and distribution of kinesiology tape samples was a statutory bar event which would

11  invalidate and should have prevented issuance of the subject design patents. However, despite

12  Quinn's knowledge of the statutory bar event, and knowledge that the design patents (or

13  applications) were filed too late under U.S. law, Quinn did not disclose this 'but for' invalidating

14  information to the USPTO. All of the above was done with an intent to deceive the USPTO into

15  granting the KT Health patents. Alternatively, the conduct was the type of egregious misconduct

16  which is also recognized as inequitable conduct post-*Therasense*.

17

18        49.      Subsequent to KT Health's original publication of its website on January 20,

19

20  2009, KT Health maintained publication of the website through present day, including by

21

22  continued publication of additional images of the kinesiology tape products claimed in its design

23  patents. KT Health also sold the products and completed other publications of the designs,

24  including by publishing videos on websites like youtube.com. By way of example, such videos

25  displayed the entirety of the kinesiology tape designs at least as early as April 18, 2009. KT

26

27

28

Health's design patents, however, have priority dates ranging between August 31, 2020 and April 5, 2022. Moreover, KT Health also knew and knows that its design patents were not entitled to earlier priority dates. The patents reference earlier applications and purport to be continuation-in-parts of such applications. However, because a continuation-in-part application adds new matter relative to its parent application, it is not entitled to priority of its parent. By filing its design applications as continuation-in-parts, KT Health was admitting knowledge of this lack of entitlement as well as conceding the issue. Consequently, because KT Health also knew that it was selling and publishing the designs for more than ten years prior to the effective filing dates of the design patents, it was improper for KT Health to file the applications for the designs in the first instance. KT Health also did not disclose its prior sales and publications of the patented designs to the USPTO, and it was a violation of KT Health's duty of disclosure and candor to the USPTO not to do so. Since the sold and disclosed designs were also identical, they were also 'but for' material non-disclosures, because the USPTO would not have granted the patents if the events had been disclosed. All of the above was done with an intent to deceive the USPTO into granting the KT Health patents. Alternatively, the conduct was the type of egregious misconduct which is also recognized as inequitable conduct post-*Therasense*.

50.     Every patent application, including KT Health's utility applications, is also unenforceable for inequitable conduct due to KT Health's intentional failure to disclose the true inventorship of the claimed inventions. Quinn knew that employees of 3H Medical were inventors of various utility and design features claimed in the KT Health patents, including (among other things): the glue design; the roll design with the backing paper that mirrors the configuration of the kinesiology tape, including at its rounded corners; and the method(s) of

manufacturing the tape products. Despite the knowledge that Quinn was not the inventor of the material claimed in the KT Health patents, or at least not the sole inventor, it was inequitable conduct for Quinn to indicate to the USPTO that he was the sole inventor, including by signing a declaration of inventorship under oath which was filed in connection with each of the applications for patent. It was also inequitable conduct not to disclose that the true inventorship was omitted. All of the above was done with an intent to deceive the USPTO into granting the KT Health patents. Alternatively, the conduct was the type of egregious misconduct which is also recognized as inequitable conduct post-*Therasense.*

51.     Alternatively, the inventions claimed in KT Health's patents – if not invalid and/or unenforceable – were all invented by employees or representatives of 3H Medical. Consequently, 3H Medical is the true owner of the KT Health patents, or at least a co-owner thereof. As at least a co-owner, 3H Medical cannot be liable for patent infringement.

52.     KT Health also failed to disclose prior art which was 'but for' material to the patentability of both its utility and design patents. KT Health knew, for example, that 3H Medical was selling the same design of kinesiology tape strip, and also kinesiology tape rolls, prior to filing its applications for patents. However, KT Health did not disclose this information to the USPTO. KT Health, including Quinn specifically, also knew of manufacturing techniques for manufacturing rolls of adhesive backed materials releasably adhered to backing paper, where the material adhered to the backing paper was cut, but without cutting the backing paper. KT Health, including Quinn specifically, also knew of products manufactured according to such methods. KT Health also knew that companies such as "Kinesio Tex" and "K-Active" were

selling similar kinesiology tape products prior to all of its applications for design and utility

patents, yet KT Tape disclosed none of these prior sales to the USPTO. Likewise, KT Health's

failure to disclose its own public demonstration and distribution of kinesiology tape samples on

or around November 11, 2008 (or November 13, 2008) to the USPTO, during prosecution of the

subject patents, is also grounds for inequitable conduct. Although KT Health filed its first utility

application within one year of the November 2008 public use and giveaway date, the inventions

disclosed were made and invented by a third party – 3H Medical. Moreover, KT Health could

not and cannot demonstrate earlier conception paired with diligence and reduction to practice,

because no member of KT Health, including Quinn, was an inventor (or at least the sole

inventor) of the subject applications or patents. All of the above was done with an intent to

deceive the USPTO into granting the KT Health patents. Alternatively, the conduct was the type

of egregious misconduct which is also recognized as inequitable conduct post-*Therasense*

### III.    KT Health's Complaint and Notice of Alleged Infringement Filed with Amazon.com

53.    On or about June 18, 2024, despite not being the lawful owner of the KT Health

patents, KT Health filed a notice of infringement with Amazon.com, accusing 3H Medical's

product listings on the website of infringing the '344 patent. Pursuant to Amazon.com policies

for addressing intellectual property violations, the notice also served as a request that 3H

Medical's product listings be taken down because of the accused infringement. According to at

least one version of the complaint:

> The referenced product listings (ASINs) appear to be direct copies of KT Health, LLCs
> patented product. Each of the referenced products are using the protected design without
> authorization.

54.     Amazon.com granted KT Health's request and took down 3H Medical's product listings associated with the following Amazon Standard Identification Numbers ("ASIN" or "ASINs"):

B077GKQPC6

B077GL48GS

B077GLFRMR

B077GLM41R

B0CP9FTB3S

55.     Amazon.com also granted KT Health's separate take-down requests that KT Health filed against 3H Medical's customers, accusing the products sold and offered for sale in connection with the following ASINs of infringement:

B0BVVN8SR4,  B0BVVPPVRY, B0BVVLN89N,  B0BVVPJNQV,  B0BVVLY227, B077GKQPC6,  B0BVVKQR6Y,  B0BVVLN4XN, B0CG5HMSSN, B0CG5FTC6L, B0B943VQBN, B0B943BS59, B0B9412CGT, B0B941Y51P, B0B94312RZ, B0B93ZQMG2, B0B93V89T3, B0B8HPSWNQ, B0B8HJBHCY, B09F2VJPK5

56.     On July 10, 2024, 3H Medical appealed the grant of KT Health's takedown requests, while also informing Amazon.com of various reasons that the '344 patent is invalid and unenforceable.

57.     On July 11, 2024, Amazon.com denied 3H Medical's appeal, stating that the '344 patent is presumed valid under the patent law and that it would not act unless the patent was invalidated in district court or cancelled by the USPTO.

58.     Also on July 10, 2024, 3H Medical contacted counsel for KT Health and requested that KT Health withdraw its Amazon.com infringement complaint. The communications also informed KT Health counsel of various reasons that the '344 patent is invalid and unenforceable. The letter directed to KT Health counsel additionally addressed the *ex parte* reexamination request filed by 3H Medical, formally requesting – supported by evidence - that the USPTO cancel the '344 patent. A copy of the reexamination request had been provided to KT Health counsel earlier on July 3, 2024. The letter also offered a compromise, that 3H Medical would agree not to cancel or invalidate further KT Health patents if KT Health would provide 3H Medical with a covenant not to sue, and otherwise agree not to submit additional infringement notices on Amazon.com

59.     In reply, KT Health counsel scheduled a teleconference with 3H Medical's counsel to discuss the disputes among the parties. On July 12, 2024, counsel for the parties conferred by telephone. 3H Medical's counsel explained the basis of invalidity of the '344 patent, along with the factual background pertaining to the parties' early attempts at collaboration. 3H Medical also requested that KT Health withdraw its Amazon.com infringement complaint by a date certain, because if the complaint was not withdrawn, 3H Medical 1) would continue to lose thousands of dollars in sales daily; and 2) would incur substantial expense removing more than one-hundred thousand kinesiology tape units accused of infringement from Amazon.com warehouses. In reply, KT Health's counsel inquired whether 3H Medical would

pay KT Health in consideration and informed that KT Health was meeting the next day to discuss the situation. KT Health's counsel also explained that it was likely the parties would just need to litigate.

60.     KT Health did not withdraw its infringement complaint on Amazon.com. Consequently, 3H Medical was forced to remove all of its remaining ASIN listings for similar kinesiology tape products, as well as remove all physical kinesiology tape inventory from Amazon warehouses nationwide, including within Baltimore, Maryland.

## IV.     Invalidity of the KT Health Patents and KT Health's Knowledge Thereof

61.     KT Health's design patents are each unambiguously invalid because they were filed long after the deadline to apply for patent protection under U.S. law. KT Health knows this, because: a) Quinn organized the November 2008 statutory bar event triggering a one-year deadline to apply for patent protection; b) Quinn was aware of the publication of KT Health's website in January of 2009 which was also a statutory bar event; c) KT Health and Quinn were aware that its products were being published, offered for sale, advertised, and sold continuously for more than a decade prior to the priority dates of KT Health's design patent applications; and d) Quinn and KT Health were aware that KT Health's design patent applications did not enjoy earlier priority dates which would have prevented their invalidity. KT Health also knows that its design patents impermissibly cover functional features, including features claimed in claims of KT Health utility patents.

62.     By way of non-limiting example, the '344 patent – which has a priority date (i.e., effective filing date) of April 5, 2022 - covers the following ornamental design:



FIG. 1

Any publication or prior sale by another which predates April 5, 2022, or any which predates April 5, 2022 by more than a year – even if KT Health was the source – is prior art to the '344 patent.

63.     Consequently, the '344 Patent is invalid (among many other reasons) based on the following exemplar prior art disclosing the claimed kinesiology tape design between the years 2009 - 2017:

64.     The prior art "Intro to KT Tape- Helpful Hints!" and "What's In The Box?" references each teach the same design as claimed in the '344 patent. More specifically, the Intro to KT Tape- Helpful Hints! reference was published on Youtube on April 18, 2009, by KT

Health, before the effective filing date of the '344 patent. The "What's In The Box?" reference was likewise published on May 24, 2011, by KT Health, more than a decade before the effective filing date of the '344 patent. Both references teach the claimed design of kinesiology tape, packed in roll form, with pre-cut sections having rounded corners, and a constricted width, 'waist' area between tape segments. *See* exemplar excerpts from references below:





65.     The What's In The Box? reference further discloses a gap between tape segments, as shown in Fig. 7 of the '344 patent:

1
2
3
4
5
6
7
8
9
10
11



12

(Close-up of What's In The Box? Reference)

13

14        66.     The 2017 TheraTape reference and the 2009 KT Tape reference likewise each

15    disclose rolls of kinesiology tape which have rounded corners and 'waist' portions, precisely as

16    shown and claimed in the '344 patent. Portions of the 2017 TheraTape reference are reproduced

17    below:

18
19
20
21
22
23
24
25
26
27
28

23
**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   67.   Portions of the 2009 KT Tape reference, which were published by KT Health, are

20   also reproduced below:

21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11



12
13    68.    In fact, the 2017 TheraTape and 2009 KT Tape references disclose the identical

14  configuration of kinesiology tape claimed by the '344 patent, including the exact same rounded

15  corners and waist. The only difference between the references and the claimed design is that the

16  kinesiology tapes are shown in different states of unrolling, or in the case of the 2017 TheraTape

17  reference, with the tape folded into a wave pattern. However, kinesiology tape is, by its very

18  nature, rollable and unrollable as well as flexible so that it can be manipulated to be in a flat or

19  wavy or any other configuration. In other words, the references plainly show the same design,

20  just in a different manipulated state of storage or use. Moreover, the roll of tape in the '344

21  patent is unclaimed as is the body of the tape, aside from the ends with the curved corners. A

22  side-by-side comparison of the configuration of 2009 KT Tape reference and the '344 claim is

23  reproduced for convenience below:

24
25
26
27
28




(Close up of 2009 KT Tape Reference)          ('344 Fig. 1 excerpt)

69.     A side-by-side comparison of the configuration of 2017 TheraTape reference is also reproduced below for convenience:





(Close up of 2017 TheraTape Reference)          ('344 Fig. 1 excerpt)

70.     Since both the 2017 TheraTape and 2009 KT Tape references disclose the claimed features of the '344 patent, each reference demonstrates that the '344 patent is invalid. Worse, the 2009 KT Tape reference was published by KT Health itself (just like the "Intro to KT

Tape- Helpful Hints!" and "What's In The Box?" references), evincing KT Health's knowledge of 'but for' material, relevant prior art which it did not disclose to the USPTO.

71.     KT Health's other design patents - '944, '400, and '420 - are invalid for the same reason that the '344 patent is invalid over the "Intro to KT Tape- Helpful Hints!"; "What's In The Box?; 2017 TheraTape; and 2009 KT Tape references. Moreover, KT Health knew of at least the "Intro to KT Tape- Helpful Hints!"; "What's In The Box?; and 2009 KT Tape references – because it published them – evincing that it was aware of this prior art which it did not disclose to the USTPO during prosecution of the '944, '400, and '420 patents.

72.     KT Health's utility patents are invalid for a variety of reasons, including reasons that overlap with KT Health's design patents related to prior art (not all of which is disclosed herein). Moreover, Quinn did not invent the subject matter of the utility patents, or at minimum, was not the sole inventor of the subject matter disclosed therein. The failure to identify proper inventorship, by itself, is a basis for finding the patents invalid.

73.     Apart from being invalid for including the wrong inventorship, KT Health's utility patents are also invalid in view of the November 11 (or November 13th) events during 2008 where the invention was publicly used and displayed, and where samples were distributed to the public. The KT Health utility patents are also invalid in view of prior art not specifically disclosed in this complaint, or for other reasons which will be disclosed by 3H Medical, under 35 U.S.C. §101 *et seq.*

**V.     Invalidity Based on Functionality Because the Claimed Kinesiology Tape Designs Are Functional, as Evidenced by KT Health's Utility Patent: U.S. Patent No. 9,308,115**

74.     KT Health's design patents are also invalid for improperly claiming primarily functional features, instead of ornamentality, contrary to as permitted by 35 U.S.C. §171.

75.     By way of non-limiting example, KT Health's U.S. Patent No. 9,308,115 ("the '115 Utility Patent") is titled "Body-Adhesive Kinesiology Tape." In the Background of the Invention section of the '115 Utility Patent, the inventors describe the prior art and the usefulness of kinesiology tape. Among other things, kinesiology tape is useful in therapy to reduce:

> soreness in overused and injured muscles and in rehabilitation to accelerate recovery. The tape can have a lifting effect on the skin which can reduce swelling and inflammation by improving circulation and reduce pain by taking pressure off pain receptors.

('115 Utility Patent, at 1:18-22)

76.     The patented invention in the '115 Utility Patent is allegedly an improvement in the art because it allows for "multiple useful conformations without the need for custom cutting and fitting." *Id.* at 2:4-6.

77.     The '115 Utility Patent contains 17 claims, all directed to varying embodiments of the patented invention. Claims 1, 6, 15 and 17 are independent claims, while claims 2-5, 7-14, and 16 are dependent claims. The following highlights the functional features of claim 1, which are also claimed in the '344 Patent:

> Body-adhesive kinesiology tape, **the body-adhesive kinesiology tape comprising individual strips of body-adhesive kinesiology tape in which a user need not cut the kinesiology tape before using**, the body-adhesive kinesiology tape comprising:

28
**COMPLAINT**

**a strip of pre-cut kinesiology tape**, the strip of pre-cut kinesiology tape resistant to tearing and resiliently elastic, the strip of pre-cut kinesiology tape comprising a weave of fibers, at least some of the weave of fibers comprising an elastic fiber;

an adhesive on a surface of the strip of pre-cut kinesiology tape, the adhesive applied in a step frequency pattern including a plurality of steps along a longitudinal length of the strip of pre-cut kinesiology tape, the step frequency pattern including the adhesive applied in a modified sine wave pattern including a series of adhesive lines and gaps, the modified sine wave pattern including upper peaks with a higher amplitude and sharper peaks relative to a baseline of a sine wave, the modified sine wave pattern including lower peaks with a higher amplitude and sharper peaks relative to the baseline of the sine wave;

wherein the adhesive is configured to adhere the strip of pre-cut kinesiology tape to a human body; and

**a backing material covering the adhesive on the strip of pre-cut kinesiology tape, wherein the backing material is configured to protect the adhesive from drying until a user is ready to apply the strip of pre-cut kinesiology tape to the human body**.

78.    Independent claim 6 further recites functional features also claimed in the '344 Patent, as shown in Figs. 6 and 7 of the '344 Patent, as follows:

**a single strip of backing material releasably attached to the two or more individual strips of pre-cut body-adhesive kinesiology tape**: . . . .

wherein **an end of each of the two or more individual strips of pre-cut body-adhesive kinesiology tape is disposed immediately adjacent to and abuts an end of an adjacent individual strip of pre-cut body-adhesive kinesiology tape** on the roll of body-adhesive kinesiology tape, **the end of each individual strip of pre-cut body-adhesive kinesiology tape being separated**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**from the end of the adjacent strip of pre-cut body-adhesive kinesiology tape solely by a single, individual cut in the body-adhesive kinesiology tape**;

**wherein an individual strip of pre-cut body-adhesive kinesiology tape is removed from the roll of body-adhesive kinesiology tape by tearing the backing material between the ends of the adjacent strips of the pre-cut body-adhesive kinesiology tape; and**

**wherein the individual strip of pre-cut body-adhesive kinesiology tape is not torn when the individual strip of pre-cut body-adhesive kinesiology tape is removed from the roll of body-adhesive kinesiology tape.**

79.     Specifically, the functional language highlighted above is depicted by the claimed portion in the middle of Fig. 6 of the '344 Patent, which shows the top view of the tape containing the backing material, and Fig. 7, which depicts the bottom view of the tape showing "the end of each individual strip of pre-cut body-adhesive kinesiology tape being separated from the end of the adjacent strip of pre-cut body-adhesive kinesiology tape solely by a single, individual cut in the body-adhesive kinesiology tape," as claimed in the '115 Utility Patent. The width constricted area (or 'waist') located between the ends of individual adjacent strips of tape in Fig. 7 is part of the "single strip of backing material releasably attached to the two or more individual strips of pre-cut body-adhesive kinesiology tape" which "[backing material is torn] between the ends of the adjacent strips of the pre-cut body-adhesive kinesiology tape" so that "the individual strip of pre-cut body-adhesive kinesiology tape is not torn when the individual strip of pre-cut body-adhesive kinesiology tape is removed from the roll of body-adhesive kinesiology tape," as claimed in the '115 Utility Patent.

1

2    80.    These same functional features claimed in the '115 Utility Patent are also claimed

3    or depicted in Figs. 6 and 7 of the '944, '400, and '420 Patents.

4

5

6    81.    In the '115 Utility Patent, KT Health also claimed rounded corners as a functional

7    feature of the claimed kinesiology tape. Specifically, dependent claim 9 expressly limits the

8    individual tape strips of independent claim 6 to having "rounded corners" which are "adjacent to

9    the rounded corners of an adjacent individual [tape] strip" as follows:

10         9. The roll of body-adhesive kinesiology tape as in claim 6, **wherein each**

11    **individual strip of the two or more individual strips of pre-cut body-adhesive**

12    **kinesiology tape includes rounded corners and the rounded corners of each**

13    **individual strip of the two or more individual strips of pre-cut body-adhesive**

14    **kinesiology tape are disposed immediately adjacent to the rounded corners of**

15    **an adjacent individual strip of pre-cut body-adhesive kinesiology tape** on the

16    roll of body-adhesive kinesiology tape.

17

18

19    82.    The specification of the '115 Utility Patent describes multiple functions of the

20    rounded corners:

21         FIG. 1 also shows that the corner of the kinesiology tape 100 can include a rounded
22         corner 115. In at least one implementation, a rounded corner 115 can prevent fraying
         during application. Additionally or alternatively, a rounded corner 115 can reduce the
23         chance of accidental detachment during use of the kinesiology tape 100. For example, a
         rounded corner 115 is much less likely than a square corner to snag on other materials,
24         such as the user's clothing, that might detach the kinesiology tape 100 during use.
         Additionally or alternatively, a rounded 115 corner can provided [sic] more comfort to
25         the user, as a rounded corner 115 does not have a sharp corner that can poke the user or
         otherwise cause discomfort.
26

27

28

*Id.* at 4:11-22.

83.     Because the rounded corners of the claimed kinesiology tape design of the '344 Patent are clearly functional, the rounded corners cannot be legally protected by a design patent. Only a finite number of ways exist to design kinesiology tape, and KT Health cannot perpetually monopolize one of only a limited number of such designs.

84.     These same functional features ("rounded corners") claimed and described in the '115 Utility Patent are also impermissibly claimed in the '944, '400, and '420  design patents.

## Count I

### (Declaratory Judgment of Invalidity of the KT Health Patents)

85.     3H Medical re-alleges Paragraphs 1 through 84 as if fully set forth herein.

86.     The '344, '944, '400, '420, '115, '571, and '697 patents are invalid under 35 U.S.C. §101 *et seq.*

87.     3H Medical therefore seeks and is entitled to a judgment that the KT Health patents are each invalid.

## Count II

### (Declaratory Judgment of Unenforceability of the KT Health Patents)

88.     3H Medical re-alleges Paragraphs 1 through 87 as if fully set forth herein.

89.     KT Health committed fraud on the USPTO – also known as inequitable conduct - during prosecution of the '344, '944, '400, '420, '115, '571, and '697 patents. KT Health knew of 'but for' material prior art and statutory bar events, and chose not to disclose this information to the USPTO, resulting in the unlawful grant of the '344, '944, '400, '420, '115, '571, and '697 patents. KT Health also engaged in egregious conduct, including by knowingly misappropriating the inventions of others such as 3H Medical, and then applying for patent protection for such inventions at the USPTO, falsely claiming Quinn to be the inventor.

90.     3H Medical therefore seeks and is entitled to a judgment that the '344, '944, '400, '420, '115, '571, and '697 patents are unenforceable.

### Count III

**(Declaratory Judgment to Amend Inventorship of KT Health's Patents Under 35 U.S.C. § 256)**

91.     3H Medical re-alleges Paragraphs 1 through 90 as if fully set forth herein.

92.     3H Medical employees or representatives contributed to the conception of at least one claim of each of the patents-in suit. Consequently, if the '344, '944, '400, '420, '115, '571, and '697 patents are not held invalid or unenforceable, inventorship of each patent should be amended pursuant to 35 U.S.C. § 256 to include only the true inventors thereof. Commensurate with the inventorship amendment, ownership of the '344, '944, '400, '420, '115, '571, and '697 patents should also be amended to name 3H Medical as the sole owner or at least as a co-owner thereof.

### Count IV

**(Declaratory Judgment of Intentional Interference with Contractual Relations)**

93.     3H Medical re-alleges Paragraphs 1 through 92 as if fully set forth herein.

94.     KT Health had knowledge of 3H Medical's contractual relationship with Amazon.com.

95.     KT Health intentionally interfered with this relationship, including by filing the accusations of patent infringement with Amazon.com in bad faith, knowing that the '344 Patent is invalid and unenforceable. KT Health also acted in bad faith by refusing to withdraw its infringement accusations upon being put on express notice of the reasons for invalidity and unenforceability of the '344 patent. Reexamination of the '344 patent has since been granted, substantiating that 3H Medical's invalidity contentions were correct.

96.     As a result of KT Health's intentional interference, Amazon.com breached or discontinued performance of 3H Medical's contract with Amazon.com.

97.     3H Medical has been damaged by Amazon.com's breach or non-performance of the contract, for which a causal connection exists between KT Health's interference and the damages suffered by 3H Medical.

98.     3H Medical seeks and is entitled to compensatory damages for KT Health's intentional interference with 3H Medical's contractual relationship with Amazon.com, including in violation of Maryland law.

**Count V**

**(Declaratory Judgment of Intentional Interference with Economic Relations)**

99.     3H Medical re-alleges Paragraphs 1 through 98 as if fully set forth herein.

100.    KT Health intentionally and willfully interfered with 3H Medical's economic relationship with Amazon.com, including by filing the accusations of patent infringement with Amazon.com in bad faith, knowing that the '344 Patent is invalid and unenforceable. KT Health also acted in bad faith by refusing to withdraw its infringement accusations upon being put on express notice of the reasons for invalidity and unenforceability of the '344 patent. Reexamination of the '344 patent has since been granted, substantiating that 3H Medical's invalidity contentions were correct.

101.    KT Health's interference with 3H Medical's relationship with Amazon.com was calculated to cause damage to 3H Medical in its lawful business with Amazon.com.

102.    KT Health's interference with 3H Medical's relationship with Amazon.com was done with an unlawful purpose to cause such damage and loss to 3H Medical.

103.    KT Health was not justified or privileged to interfere with the relationship between 3H Medical and Amazon.com. Worse, it acted and then refused to correct its actions, with full knowledge of the harm being caused and in bad faith.

104.    Actual damage and loss to 3H Medical resulted from KT Health's interference with 3H Medical's relationship with Amazon.com.

35
**COMPLAINT**

105.    3H Medical seeks and is entitled to compensatory damages for KT Health's interference with 3H Medical's relationship with Amazon.com, including in violation of Maryland law.

### Count VI

### (Declaratory Judgment of Unfair Competition)

106.    3H Medical re-alleges Paragraphs 1 through 105 as if fully set forth herein.

107.    KT Health knew that it was not entitled to the rights conveyed by the '344 patent when it was applied for and knew and knows that the '344 patent was fraudulently obtained and improperly granted. KT Health also knows that Quinn is not the inventor, and KT Health is not the lawful owner, of the '344 patent invention. Despite this knowledge, KT Health filed infringement complaints, asserting infringement of the '344 patent, in bad faith, for the purpose of unlawfully suppressing competition and for its own unlawful gains.

108.    3H Medical seeks and is entitled to compensatory damages for KT Health's unfair competition, including in violation of Maryland law.

### PRAYER FOR RELIEF

**WHEREFORE,** 3H Medical requests that the Court:

1.    Grant a preliminary and permanent injunction restraining and enjoining KT Health and any and all principals, officers, agents, servants, employees, attorneys, representatives, successors and assigns, and all those in privity, concert or participation with KT Health and all those who receive actual notice of the order, from:

**COMPLAINT**

(i)      directly or indirectly enforcing the KT Health patents against 3H Medical or its customers, or otherwise accusing 3H Medical or its customers of infringement of such patents, whether privately or publicly;

(ii)      marking KT Health's products with the KT Health patents, or otherwise representing or advertising that KT Health's products are patented by such patents;

(iii)      engaging in any conduct that tends falsely to represent that, or is likely to confuse or mislead others to believe that KT Health is the only lawful seller of products covered by the KT Health patents, or that others are unlawful sellers or advertisers of products covered by the KT Health patents;

(iv)      otherwise competing unfairly with 3H Medical in any manner;

(v)      assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (iv) above.


2.      Declare that the '344, '944, '400, '420, '115, '571, and '697 patents are invalid under 35 U.S.C. §101 *et seq.*


3.      Declare that the '344, '944, '400, '420, '115, '571, and '697 patents are unenforceable due to KT Health's and Quinn's fraud on the United States Patent Office.


4.      If the '344, '944, '400, '420, '115, '571, and '697 patents are not declared invalid and/or unenforceable, declare that the inventorship of the '344, '944, '400, '420, '115, '571, and '697 patents is amended under 35 U.S.C. § 256.

5.    If the '344, '944, '400, '420, '115, '571, and '697 patents are not declared invalid and/or unenforceable, declare that the ownership of the '344, '944, '400, '420, '115, '571, and '697 patents is amended to include 3H Medical.

6.    Declare that KT Health intentionally interfered with 3H Medical's contractual relationship with Amazon.com by filing a notice of alleged infringement with Amazon.com knowing that the '344 patent was improperly obtained from the USPTO.

7.    Declare that KT Health intentionally and willfully interfered with 3H Medical's economic relationship with Amazon.com by filing a notice of alleged infringement with Amazon.com knowing that the '344 patent was improperly obtained from the USPTO.

8.    Declare that KT Health unfairly competed with 3H Medical by filing a notice of alleged infringement with Amazon.com knowing that the '344 patent was improperly obtained from the USPTO.

9.    Require KT Health to withdraw its infringement complaints with Amazon.com, and to inform Amazon.com of KT Health's unlawful conduct as complained of herein and of the judgment requiring KT Health to cease such unlawful conduct.

10.    Require KT Health and Quinn to disseminate corrective advertising, at KT Health's expense and subject to 3H Medical's approval, that informs consumers, the trade and the public at large of KT Health's unlawful conduct as complained of herein and of the judgment

requiring KT Health to cease such unlawful conduct, and/or require KT Health to pay 3H Medical's costs in producing and disseminating such corrective advertising.

11.     Direct KT Health to file with this Court and serve on counsel for 3H Medical, within thirty (30) days after entry of the injunctions, a written report under oath setting forth in detail the manner in which KT Health has complied with the foregoing paragraphs.

12.     Direct KT Health to provide an accounting of profits made by KT Health as a result of KT Health's unlawful conduct.

13.     Order KT Health to pay a judgment in the amount of 3H Medical's actual damages, as well as KT Health's profits, and pre- and post-judgment interest pursuant to 28 U.S.C. § 1961, in an amount to be proven at trial.

14.     Award to 3H Medical its attorneys' fees, due to the exceptional nature of this case, and all of 3H Medical's costs and expenses of litigation, pursuant to 35 U.S.C. §285.

15.     Grant to 3H Medical such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury in this action.

Respectfully submitted,

Dated:  September 23, 2024        /s/  Matthew A. Pequignot

Matthew A. Pequignot
Bar No. 16062
Pequignot + Myers
2585 Ala Namahana Pkwy Unit 1007
Kilauea, Hawaii 96754
Phone: 202-328-1244
Facsimile: 202-328-2219
mpequignot@pmiplaw.com

*Attorneys for Plaintiff Nanjing 3H Medical
Products Co., Ltd.*