# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NANJING 3H MEDICAL PRODUCTS CO., LTD. | * | |
| | * | |
| *Plaintiff*, | * | |
| | | |
| v. | | Civil Action No. RDB-24-2745 |
| | * | |
| KT HEALTH, LLC, | * | |
| | | |
| *Defendant*. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

In this action for declaratory relief, Plaintiff Nanjing 3H Medical Products Company, Ltd. ("Plaintiff" or "3H Medical") alleges that Defendant KT Health, LLC ("Defendant" or "KT Health") inequitably obtained seven patents for kinesiology tape products invented by 3H Medical employees and used one of those patents to exclude 3H Medical from the online marketplace operated by Amazon.com, Inc. ("Amazon").  *See generally* (ECF No. 4-1).  3H Medical, which operates in China, allegedly allowed KT Health's proprietor, Reed Quinn ("Mr. Quinn"), to commercialize its kinesiology tape products in the United States in 2008, but Mr. Quinn and KT Health patented the products in their own names between 2008 and 2022.  (*Id.* ¶ 2.)  In June 2024, KT Health used one of its patents to file a notice of infringement with Amazon, which removed 3H Medical's listings from its site.  (*Id.* ¶ 53.)  On July 10, 2024, 3H Medical filed an *ex parte* reexamination[1] request with the United States Patent and Trademark

---

[1]  The USPTO may grant *ex parte* reexamination where a party asserts that there exists a "substantial new question of patentability."  *In re Vivint, Inc.*, 14 F.4th 1342, 1346 (Fed. Cir. 2021) (quoting 35 U.S.C. § 303(a)).  During such proceedings, the patent does not receive a presumption of validity, and the patentee must prove validity by a preponderance of the evidence.  *In re Swanson*, 540 F.3d 1368, 1377–78 (Fed. Cir. 2008).

Office ("USPTO"), in which it sought cancellation of the patent undergirding KT Health's complaint to Amazon. (ECF No. 4-1 ¶ 58.) USPTO granted *ex parte* reexamination, and that proceeding remains pending. *See* (ECF No. 35-1.)

On September 23, 2025, 3H Medical initiated this action by filing in this Court a six-Count Complaint (ECF No. 4-1) against KT Health, seeking: (1) Declaratory Judgment of Invalidity of the KT Health Patents (Count I); (2) Declaratory Judgment of Unenforceability of the KT Health Patents (Count II); (3) Declaratory Judgment to Amend Inventorship of KT Health's Patents Under 35 U.S.C. § 256 (Count III); (4) Declaratory Judgment of Intentional Interference with Contractual Relations (Count IV); (5) Declaratory Judgment of Intentional Interference with Economic Relations (Count V); and (6) Declaratory Judgment of Unfair Competition (Count VI). (ECF No. 4-1.) Unlike the *ex parte* reexamination, this action challenges the validity and enforceability of seven patents—four design patents and three utility patents—that KT Health has obtained for kinesiology tape products since 2008.

Presently pending before this Court are two motions filed by the parties: (1) Plaintiff's Motion for Preliminary Injunction (ECF No. 7); and (2) Defendant's Motion to Dismiss (ECF No. 11). The Court has reviewed the parties' filings and, on August 20, 2025, heard oral argument from the parties as to both motions. For the reasons set forth on the record and elaborated below, Defendant's Motion to Dismiss (ECF No. 11) is GRANTED IN PART an DENIED IN PART. Specifically, Defendant's Motion (ECF No. 11) is DENIED as to Counts I, III, IV, V, and VI, and GRANTED as to Count II, which is DISMISSED WITHOUT PREJUDICE. Additionally, as set forth on the record and further explained below, Plaintiff's Motion for Preliminary Injunction is DENIED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 4-1) and accepted as true for the purpose of Defendant's Motion to Dismiss (ECF No. 11).  The parties offered general background statements at the motions hearing, and the Court provides only a brief factual summary below.

This litigation relates to the therapeutic tape known generically as kinesiology therapeutic tape ("kinesiology tape"), which is used to treat pain and disability from physical ailments, particularly athletic injuries.[2]  (ECF No. 4-1 ¶ 14.)  3H Medical alleges that it has innovated, developed, manufactured, commercialized, and patented kinesiology tape since before 2008.  (*Id.* ¶ 15.)  It manufactures kinesiology tape for third-party sellers and sells its own branded products via online platforms such as Amazon.com ("Amazon").  (*Id.*)  Before 2008, it manufactured kinesiology tape in the form of rolls of tape; rectangles of various dimensions with rounded corners; and rectangles of various dimensions with rounded corners and pre-cut centerlines down the strip of tape.  (*Id.* ¶¶ 17, 18.)  It sold such products under brands like Easytape™ and Spidertech.  (*Id.* ¶ 18.)

According to 3H Medical, the parties' relationship began in 2008, when KT Health's founder, Reed Quinn ("Mr. Quinn"), requested that 3H Medical manufacture kinesiology tape

---

[2]  Common names for kinesiology tape include "elastic therapeutic tape," "kinesio tape," "k-tape," and "KT." (ECF No. 4-1 ¶ 14.)  For clarity, this Memorandum Opinion refers to the product as "kinesiology tape."

for him.  (*Id.* ¶ 19.)  3H Medical alleges that Mr. Quinn contacted it to request rounded corner, rectangular tape strips sold in roll configurations but customized with "KT Health" logos and custom glue patterns.  (*Id.*)  Mr. Quinn informed 3H Medical that he intended to re-sell this product to American retailers.  (*Id.*)  Accordingly, he worked with 3H Medical to develop samples, which he publicly displayed and distributed to physical trainers on November 11 or November 13, 2008.  (*Id.* ¶¶ 20–21.)  Mr. Quinn then ceased communication with 3H Medical, and on November 26, 2008, KT Health—then called Lumos, Inc.—sought patent protection for (1) the kinesiology tape rolls that 3H Medical allegedly designed; and (2) the method of manufacture of such tape.  (*Id.* ¶¶ 23–24.)  On or about January 20, 2009, KT Health published its website, which allegedly promoted the products produced by 3H Medical.  (*Id.* ¶ 22.)

3H Medical alleges that between 2008 and 2022, Mr. Quinn was named as sole inventor in at least fifteen utility and design patent applications and KT Health was named as owner in such patents.  (*Id.* ¶ 24; ECF No. 7 at 10.)  The first patent KT Health and Mr. Quinn obtained was an informal provisional patent—filed as U.S. Provisional Patent Application Number 61/200,400 ('400 Application) on November 26, 2008—that is not challenged in this action. (ECF No. 4-1 ¶ 48.)  As relevant to the instant matter, 3H Medical challenges the validity of seven subsequent patents: four design patents and three utility patents.[3]  The challenged utility

---

[3]  "A design patent protects a 'new, original and ornamental design for an article of manufacture.'"  *LKQ Corp. v. GM Glob. Tech. Operations, LLC*, 102 F.4th 1280, 1291 (Fed. Cir. 2024) (quoting 35 U.S.C. § 171(a)).  A utility patent protects the "function" of a product.  *See* 35 U.S.C. § 171; USPTO, USPTO.GOV, Manual of Patent Examining Procedure § 1502.01.  Generally, "design patents have no written description or written claims to define their scope; the invention is defined by the overall visual impression that the drawings convey."  *LKQ Corp.*, 102 F.4th at 1291 (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679–80 (Fed. Cir. 2008) (en banc)).  The claim or claims in a utility patent, however, are found in a written description.  *See* 35 U.S.C. §§ 112, 113.  Generally, design and utility patents face the same statutory requirements.  *LKQ Corp.*, 102 F.4th at 1291 (quoting 35 U.S.C. § 171(b)).

patents include: (1) U.S. Patent Number 9,308,115 ("'115 Patent"), which KT Health sought in the '355 Application filed on November 25, 2009; (2) U.S. Patent Number 10,617,571 ("'571 Patent"), which KT Health sought in the '333 Application filed on July 21, 2011; and (3) U.S. Patent Number 10,973, 697 ("'697 Patent"), which KT Health sought in the '416 Patent filed on December 19, 2013.  The '115 Patent claims "body-adhesive kinesiology tape," while the '571 and '697 Patents claim "pre-cut strips of kinesiology tape."  Although KT Health filed the applications for these patents between 2009 and 2013, it asserts that they claim priority to the '400 Application filed in November 2008.  As a result, the challenged utility patents facially claim priority to the '400 Application, but 3H Medical alleges that the utility patents are effective only as of the filing dates of their respective applications.

The challenged design patents include: (1) U.S. Patent Number D962,344 ("'344 Patent"), which KT Health sought in the '581 Application filed on April 5, 2022; (2) U.S. Patent Number D947,944 ("'944 Patent"), which KT Health sought in the '694 Application filed on August 31, 2020; (3) U.S. Patent Number D988,400 ("'400 Patent"), which KT Health sought in the '612 Application filed on August 30, 2022; and (4) U.S. Patent Number D1,011,420 ("'420 Patent"), which KT Health sought in the '600 Application filed on August 30, 2022.  Each of these patents claims the "ornamental design for a roll of pre-cut strips of kinesiology tape," and KT Health designated each design patent as continuing-in-part ("CIP").[4]  Unlike utility patents, which may claim priority to an earlier provisional patent application, design patents may only claim priority to parent non-provisional patent

---

[4]   A CIP application "is an application filed during the lifetime of an earlier nonprovisional application . . . repeating some substantial portion . . . and adding matter not disclosed in the said earlier nonprovisional application." *Univ. of W. Va. Bd. of Trs. v. VanVoorhies*, 278 F.3d 1288, 1297 (Fed. Cir. 2002).

applications.  35 U.S.C. § 172; (ECF No. 4-1 ¶ 48).  Accordingly, KT Health asserts that each challenged design patent claims priority to the '355 Application filed on November 25, 2009.  Although the design patents facially claim priority to the '355 Application, 3H Medical alleges that they are entitled only to the filing dates of their respective applications.

On or about June 18, 2024, KT Health filed a notice of infringement with Amazon in which it accused 3H Medical of selling products that infringed the '344 Patent.  (ECF No. 4-1 ¶ 53.)  Consistent with Amazon's policies, the notice included a request that 3H Medical's listings be removed because "[t]he referenced product listings . . . appear to be direct copies of KT Health's . . . patented product . . . using the protected design without authorization."  (*Id.*)  In response, Amazon removed 3H Medical listings associated with five Amazon Standard Identification Numbers ("ASINs").  (*Id.* ¶ 54.)  Additionally, KT Health filed separate infringement notices requesting that Amazon remove listings of 3H Medical's customers who sold kinesiology tape produced by 3H Medical.  (*Id.* ¶ 55.)  Amazon complied, and ultimately removed products associated with 20 ASINs.  (*Id.*)  Although 3H Medical appealed the removals, Amazon denied the appeal, stating that the '344 Patent is presumed valid and "[Amazon] would not act unless the patent was invalidated in district court or cancelled by the USPTO."  (*Id.* ¶¶ 56–57.)  Ultimately, 3H Medical had to remove its remaining Amazon listings for similar kinesiology tape products, and collect all physical kinesiology tape inventory from Amazon warehouses nationwide.  (*Id.* ¶ 60.)

On July 10, 2024, 3H Medical filed an *ex parte* reexamination request with USPTO, in which it formally requested cancellation of the '344 Patent.  (*Id.* ¶ 58.)  After USPTO granted such reexamination, 3H Medical initiated this action on September 23, 2024.  (ECF No. 1;

ECF No. 4-1.)   In its Complaint, 3H Medical alleges that various deficiencies render the challenged patents invalid or unenforceable and asserts Maryland tort law claims based on KT Health's use of the '344 Patent to file a notice of infringement with Amazon.   It contends that KT Health obtained the patents inequitably because it intentionally and deceptively failed to disclose to USPTO material prior art, public displays, and inventorship or inventorship contributions by 3H Medical employees.[5]   (*Id.* ¶¶ 47, 48, 49, 61, 52.)   As noted above, it alleges that the patents are not entitled to claim priority to earlier applications and are invalid as anticipated by prior art including: (1) an April 18, 2009, YouTube Video titled "Intro to KT Tape-Helpful Hints!" ("2009 Reference"); (2) KT Health's May 24, 2011, "What's in The Box?" video ("2011 Reference"); and (3) publications by KT Tape in 2009 and Theratape in 2017 of identical products.   (*Id.* ¶¶ 62–64, 68–71.)   Finally, it argues that the design patents improperly claim functional features.   (*Id.* ¶¶ 74–84.)   3H Medical subsequently filed a Motion for Preliminary Injunction (ECF No. 7) ("Plaintiff's Motion"), requesting relief based only on invalidity of the '344 Patent.   KT Health then filed a Motion to Dismiss (ECF No. 11) ("Defendant's Motion").   3H Medical responded in Opposition (ECF No. 15), and Defendant Replied (ECF No. 18).   Similarly, KT Health responded in Opposition (ECF No. 18) to Plaintiff's Motion, and Plaintiff Replied (ECF No. 31.)

   On February 27, 2025, USPTO issued a non-final rejection of the claim in the '344 Patent, concluding that the claimed design was anticipated by the 2009 and 2011 References. (ECF No. 32-1 at 7–10.)   In April 2025, KT Health submitted arguments of validity to USPTO

---

[5]  Patents must be novel and nonobvious, so a person generally cannot claim an invention already publicly available in the form of prior art.  35 U.S.C. §§ 102(a)(1), 102(b); *see Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*, 108 F.4th 1376, 1380–81 (Fed. Cir. 2024).

in which it attempted to prove that the '344 Patent is entitled to claim priority to the '355 Application filed November 25, 2009, such that the 2009 and 2011 References would not be prior art. *See* (ECF No. 33.) On July 11, 2025, USPTO issued a final rejection of the claim in the '344 Patent under 35 U.S.C. § 102(a)(1). *See* (ECF No. 35-1.) USPTO determined the '344 Patent could not claim priority to the '355 Application because the design it claimed was not adequately disclosed therein. (*Id.* at 9.) It thus created a *new* design, "including . . . altered scope and specific ornamental thickness," and the 2009 and 2011 References constituted impermissible prior art. (*Id.* at 4–8, 14.) Absent extension, KT Health has two months from the date of the final rejection to appeal to the Board of Patent Appeals and Interferences.[6]

## STANDARD OF REVIEW

### I.    Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). As Judge Bredar of this Court has recognized, Federal Rule of Civil Procedure "9(b) requires a party alleging fraud or mistake to plead the factual circumstances with particularity, but allows 'conditions of a person's state of mind,' such as intent and knowledge, to be alleged generally. Whether a party has pled inequitable conduct with the requisite particularity under Rule 9(b) is a question governed by

---

[6] At the motions hearing, KT Health for the first time offered a notice that one of the examiners in the *ex parte* reexamination had accepted its arguments to amend the '344 Patent such that it could claim priority to the '355 Application. *See* (ECF No. 39.) 3H Medical contends that the notice supports its arguments and, under *Festo Corp. v. Shoketsu Knzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002), such amendment would afford it intervening rights. The parties represented that KT Health filed this notice with the USPTO at approximately 7:10 PM on August 19, 2025. KT Health did not file the notice in this Court, and the Court did not have the opportunity to review the filing before the hearing. Both parties agree that the notice represents the opinion of one of several examiners involved in the reexamination. Accordingly, the Court declines to consider this filing other than to note that it reflects (1) KT Health's arguments in the ongoing reexamination; and (2) one of the examiners believes the '344 Patent may be amenable to amendment.

the law of the Federal Circuit." *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, Civ. No. JKB-09-2657, 2011 WL 2415014, at *3 (D. Md. June 10, 2011) (citing *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## II.    Preliminary Injunction

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). "[M]andatory preliminary injunctions— those that alter rather than preserve the status quo—are disfavored," and should be granted only where "the applicants' right to relief [is] indisputably clear." *Mtn. Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019) (citation omitted).

In determining whether to issue a preliminary injunction, the Court must follow the test set forth by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), which requires a showing that:

> (1) the movant is likely to succeed on the merits;
> (2) the movant is likely to suffer irreparable harm absent preliminary relief;
> (3) the balance of equities favors the movant; and
> (4) an injunction is in the public interest.

*Id.* at 20.; *accord Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020). The Court cannot issue a preliminary injunction absent a "clear showing" that all four requirements are satisfied. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 979 F.3d 219, 226 (4th Cir. 2020), *rev'd on other grounds*, 2 F.4th 330 (4th Cir. 2021). The plaintiff "bears the burden of establishing that each of these factors supports granting the injunction." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

## ANALYSIS

## I.    Defendant's Motion to Dismiss (ECF No. 11)

In its Motion to Dismiss (ECF No. 11) under Federal Rule 12(b)(6), KT Health argues that (1) the claim for declaratory judgment of invalidity in Count I must be dismissed because

3H Medical fails to plead facts necessary to show invalidity based on prior art or public disclosure, (ECF No. 11-1 at 16–19); (2) the claim for declaratory judgment of unenforceability due to inequitable conduct in Count II must be dismissed because 3H Medical has not met the heightened pleading standard in Federal Rule 9(b), (*id.* at 8–16); (3) 3H Medical fails to identify the name of the alleged true inventor, such that the incorrect inventorship claim in Count III must be dismissed, (*id.* at 4–8); and (4) 3H Medical's intentional interference claims in Counts IV and V and unfair competition claim in Count VI must be dismissed because they rest on the inadequately pled invalidity and unenforceability claims, (*id.* at 19).  The Court addresses each claim in turn, grouping some claims together where appropriate.

### A.  Counts I and III

Although Count I seeks a declaratory judgment of invalidity as to all patents, it mirrors claim for declaratory judgment of incorrect inventorship in Count III by alleging incorrect inventorship as one theory of invalidity.  Accordingly, to the extent 3H Medical has adequately alleged a claim for incorrect inventorship under Count III, it has also sufficiently alleged a claim of invalidity under Count I.  For this reason, the parties at the motions hearing addressed both Counts together, and the Court does the same.  For the reasons stated on the record and elaborated below, KT Health's Motion to Dismiss is denied as to Counts I and III.

Patents must be novel, and a person is not entitled to a patent if "the claimed invention was . . . in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention[.]"  35 U.S.C. § 102(a)(1); *see Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*, 108 F.4th 1376, 1380–81 (Fed. Cir. 2024).  To prove a patent invalid by prior art, a plaintiff must show (1) publicly available prior art disclosed "each and every limitation of the claimed

invention;" and (2) the patent's effective date is more than one year *after* the prior art became public. *See Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *Hoover Grp. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995); 35 U.S.C. § 102(b)(1). Generally, a patent is effective upon the date its application was filed, but continuing-in-part ("CIP") applications may claim priority to the filing date of a parent non-provisional application. *Nat. Alts. Int'l, Inc. v. Iancu*, 904 F.3d 1375, 1379–80, 1383 (Fed. Cir. 2018); 35 U.S.C. § 120. Novel claims in a CIP application are only entitled to claim priority, however, if the earlier application adequately disclosed the claim under 35 U.S.C. § 112:

> Subject matter that arises for the first time in the CIP application does not receive the benefit of the filing date of the parent application. Thus, the decision on the proper priority date—the parent application date or the CIP application date—for subject matter claimed in a CIP application depends on when that subject matter first appeared in the patent disclosures. To decide this question, a court must examine whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter. This is a question of fact.

*Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302–03 (Fed. Cir. 1999).

Importantly, a plaintiff alleging invalidity based on prior art not considered during initial patent prosecution may rely on the "filing date of the CIP Application." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008). That is, even where a patent facially provides or a patentee claims an earlier priority date, a plaintiff may rest prior art allegations upon the filing date of the CIP Application itself. *Id.* Once the plaintiff has sufficiently alleged prior art, the defendant must "to come forward with evidence to prove entitlement to claim priority to an earlier filing date." *Id.* at 1305–06. Where the parties do not dispute the underlying facts, "[e]ntitlement to priority under § 120 is a legal determination based on underlying fact findings." *Iancu*, 904 F.3d at 1379.

12

As stated on the record, significant legal questions remain as to the priority dates of the challenged patents, but 3H Medical has sufficiently alleged invalidity based on prior art at this pleading stage.  Construing all facts and inferences to favor 3H Medical, it has alleged that USPTO made no determination of priority with respect to the asserted prior art because such prior art was not disclosed during prosecution of the patents.  Thus, 3H Medical is entitled to rest its claims on the filing dates of the CIP applications, which at the earliest were filed in 2020.  *See PowerOasis, Inc.*, 522 F.3d at 1305–06.  Relatedly, 3H Medical alleges that the new features claimed in the design patents were not adequately disclosed in the '355 Application, so they are not entitled to the November 25, 2009, priority date.  *See Augustine Med.*, 181 F.3d 1302–03; (ECF No. 4-1 ¶¶ 25, 28, 31.)  At this pleading stage, the Court must accept as true such factual allegations, and KT Health has not offered evidence showing it is entitled to claim earlier priority dates as to any of the challenged patents.  At this pleading stage, for the reasons stated on the record and those stated above, 3H Medical has adequately stated its claim of invalidity as to all challenged patents in Count I.

Moreover, as stated on the record, 3H Medical has adequately stated a claim of invalidity based on incorrect inventorship as to all patents.[7]  Under 35 U.S.C. § 256, there exist two types of inventorship errors that may render a patent invalid: misjoinder and nonjoinder.

---

[7] During the motions hearing, KT Health contended that the theory of incorrect inventorship advanced under 3H Medical's invalidity claim in Count I was subject to the heightened pleading standard in Federal Rule 9(b).  Furthermore, relying on 3H Medical's allegations in Count III, KT Health argued that 3H Medical only alleged a claim of nonjoinder of joint inventors such that it was required to name the specific omitted inventors.  Ultimately, however, both parties acknowledged on the record that the claim of incorrect inventorship in Count III may be pled in the alternative to the allegations of invalidity in Count I.  KT Health also acknowledged that (1) 3H Medical only specifically alleges fraud under its claim of inequitable conduct in Count II, and (2) it has provided no case, statute, or other legal authority stating that a plaintiff is required to specifically name the alleged true inventor to state a claim of incorrect inventorship.  Moreover, the Federal Circuit has recognized that claims of incorrect inventorship are not subject to a heightened pleading standard. *See CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1359 (Fed. Cir. 2019) (applying *Twombly* to incorrect inventorship).

*Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348–49 (Fed. Cir. 1998). Misjoinder refers to improperly naming a non-inventor as the inventor, while nonjoinder refers to omitting inventors. *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019). "The inventors named in an issued patent are presumed correct . . . ." *Univ. of Pittsburgh of Commonwealth Sys. Of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009). There is no heightened pleading standard for incorrect inventorship, but a plaintiff must prove incorrect inventorship by clear and convincing evidence. *CODA Dev.*, 916 F.3d at 1359 (applying *Twombly* to incorrect inventorship claim); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1353 (Fed. Cir. 1998).

As to nonjoinder, a person is a joint inventor only if that person "make[s] a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997). Joint inventors must "collaborat[e] or work[] under common direction." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992). Courts have held nonjoinder adequately alleged where the plaintiff alleges that the named inventor: (1) did not conceive the invention at issue; (2) previously failed to develop the technology at issue; and (3) distanced himself from the plaintiff at the time he filed for the patent. *See CODA Dev.*, 916 F.3d at 1359. As both parties acknowledged, incorrect inventorship requires the plaintiff to allege specific facts showing that the named inventor did *not* contribute to the invention.[8] *See Network Apps LLc v. AT&T Mobility, LLC*, 778 F. Supp. 3d 610, 622–23 (S.D.N.Y. 2025) (collecting cases).

---

[8] As noted above, although KT Health initially asserted that 3H Medical failed to sufficiently allege the names of true inventors, it acknowledged on the record that it has not cited any legal authority recognizing such a requirement.

At this pleading stage, construing all facts in 3H Medical's favor, it has sufficiently alleged invalidity based on misjoinder and, alternatively, nonjoinder. 3H Medical has clearly alleged that Mr. Quinn—the named inventor on all seven patents—did not conceive of the inventions at issue because it designed and produced those features for him in 2008. (ECF No. 4-1 ¶¶ 77–78, 16–17, 19–20.) Specifically, it has alleged that (1) "[a]t the time [Mr.] Quinn approached 3H Medical, [it] had long been manufacturing kinesiology tape products in the form of rectangles (of various dimensions) with rounded corners. Some of the tape products contained pre-cut centerlines and some did not;" (*id.* ¶ 17); (2) 3H Medical "developed new manufacturing techniques to make the product, designed new glue patterns . . . and developed the design of the roll itself," after Mr. Quinn approached it in 2008, (*id.* ¶¶ 18–20); (3) 3H Medical "conceiv[ed] of new manufacturing methods and . . . contribut[ed] important design elements," (*id.* ¶ 23). Accordingly, 3H Medical has sufficiently alleged that Mr. Quinn did not develop the claims in the challenged patents, and it has adequately stated a claim for invalidity of all the challenged patents based on misjoinder.

Relatedly, 3H Medical has adequately alleged an alternative claim of nonjoinder—and thus invalidity—by alleging that even if its employees "worked together" with Mr. Quinn to "develop[] new manufacturing techniques to make the product, design[] new glue patterns . . . and develop[] the design of the roll itself[,]" he did not conceive of the inventions alone. (*Id.* ¶ 20.) 3H Medical has alleged that Mr. "Quinn knew that employes of 3H Medical were inventors of various utility and design features claimed in the KT Health patents, including (among other things): the glue design; the roll design with the backing paper that mirrors the configuration of the kinesiology tape, including at its rounded corners; and the method(s) of

manufacturing the tape products," (*id.* ¶ 50).  Finally, it has alleged that Mr. "Quinn attempted to lure at least one key 3H Medical employee away from 3H Medical" and "ceased communications with 3H Medical and began applying for patent protections for the products and methods that 3H Medical designed, conceived, and reduced to practice."  (*Id.* ¶ 23).

At this pleading stage, construing all facts and reasonable inferences to favor 3H Medical, it has adequately stated a claim of invalidity based on either misjoinder or nonjoinder in Count I.  For the same reasons, it has also adequately alleged its claim of incorrect inventorship under a theory of misjoinder or nonjoinder in Count III.  Defendant's Motion to Dismiss (ECF No. 11) is denied as to the claims for declaratory judgment of invalidity in Count I and declaratory judgment of incorrect inventorship in Count III.

### B. Count II

As stated on the record, however, 3H Medical has not adequately alleged declaratory judgment of unenforceability based on inequitable conduct in Count II.  As both parties agree, Federal Rule of Civil Procedure 9(b) and the U.S. Court of Appeals for the Federal Circuit's decisions in *Therasense, Inc. v. Becton, Dickinson, & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) and *Exergen Corporation v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) provide the pleading standard for unenforceability of a patent based on inequitable conduct.  The Federal Circuit has held that a plaintiff alleging inequitable conduct must allege (1) "the applicant misrepresented or omitted material information," and (2) did so "with the specific intent to deceive the [US]PTO."  *Therasense*, 649 F.3d at 1287.  Additionally, under Federal Rule 9(b)'s heightened pleading standard for fraud claims, a plaintiff must allege "with particularity" "the who, what, when, where, and how of the material misrepresentation or omission committed

before the [US]PTO," but specific intent may be alleged generally.  *Exergen Corp.*, 575 F.3d at 1327–28 (citing FED. R. CIV. P. 9(b).)  To sufficiently allege specific intent, therefore, a plaintiff need only "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."  *Id.* at 1327.  A plaintiff meets this burden by alleging a "specific individual[] who owed a duty of disclosure in prosecuting the [patent] knew of the specific [material] information" and failed to disclose it.  *Id.* at 1330.

In this case, 3H Medical has not adequately alleged that KT Health acted with specific intent to deceive USPTO during prosecution of the challenged patents.  It has alleged that Mr. Quinn failed to disclose to USPTO that (1) 3H Medical was already producing similar kinesiology tape products in 2008; (2) 3H Medical at minimum worked with Mr. Quinn to develop samples of the products that he sought to patent; and (3) Mr. Quinn knew of examples of prior art of the product he patented in 2009.  As the Court noted on the record, however, the alleged prior art references—including the 2009 and 2011 References—either post-date KT Health's first provisional patent application in 2008 and its first non-provisional patent application in 2009 or fall within the one-year statutory exception for publications by a patentee.  *See* 35 U.S.C. § 102(b)(1).  Thus, the Court cannot reasonably infer that Mr. Quinn and KT Health intended to deceive USPTO because the facts equally support the inference that they believed the proposed design patents claimed priority to the '355 Application and the utility patents claimed priority to the '155 Application such that the alleged references were not prior art.  Indeed, the challenged patents reflect facial priority dates consistent with that

belief. As stated on the record, the facts alleged do not support a reasonable inference that KT Health acted with specific intent to deceive USPTO.[9] *See Exergen Corp.*, 575 F.3d at 1327.

For the reasons stated on the record and elaborated above, 3H Medical fails to clear the initial hurdle of generally pleading specific intent to deceive, and Defendant's Motion to Dismiss is granted as to Count II.[10] As stated on the record, dismissal is without prejudice. A plaintiff may amend her complaint as a matter of course within twenty-one days of serving it or twenty-one days "after service of a responsive pleading or . . . service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "[W]hen the district court believes a deficiency in a complaint can be cured, it should say so and grant leave to amend." *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022). 3H Medical asserted on the record that it possesses evidence to sufficiently allege Count II under Federal Rule 9(b). In accordance with liberal federal pleading rules, dismissal of Count II is without prejudice and with leave to amend.[11]

---

[9] To the extent that 3H Medical argues that its own kinesiology tape sales and those of companies like Kinesio Tex and K-Active before 2008 constitute prior art, its pleadings do not sufficiently allege that Mr. Quinn or KT Health acted with intent to deceive the USPTO by failing to disclose the existence of such products. 3H Medical does not clearly allege that Mr. Quinn and KT Health were specifically aware of such sales or perceived them to be sufficiently similar to their own product to allow a reasonable inference that they acted with intent to deceive in failing to disclose them. *See Therasense*, 649 F.3d at 1330 (requiring specific awareness of alleged material information by party with "a duty of disclosure in prosecuting" the patent).

[10] The Court emphasizes that a plaintiff must specifically allege "the who, what, when, where, and how of the material misrepresentation or omission committed before the [US]PTO." *Exergen Corp.*, 575 F.3d at 1327 (citing FED. R. CIV. P. 9(b).) "A misstatement or omission is material only if 'there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue.'" *Hoffmann-La Roche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011, 1015 (N.D. Cal. 2004) (quoting *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1367 (Fed. Cir. 2003)). In this case, where 3H Medical challenges seven patents, such allegations must be adequately alleged as to each challenged patent.

[11] As noted on the record, the Court will file a separate Letter Order instructing the parties of the deadlines for amendments, responsive pleadings, and related filings.

### C.  Counts IV, V, and VI

Finally, as stated on the record and explained below, 3H Medical has adequately alleged its claims under Maryland state law for declaratory judgment of intentional interference with contractual relations in Count IV, declaratory judgment of intentional interference with economic relations in Count V, and declaratory judgment of unfair competition in Count VI. KT Health seeks dismissal of these claims largely on the theory that they reiterate the invalidity, unenforceability, and incorrect inventorship claims such that any insufficiency as to Counts I, II, or III necessarily renders the remaining Counts inadequately alleged.  *See* (ECF No. 11-1 at 19; ECF No. 18 at 13).  As noted on the record, however, Counts IV, V, and VI arise are adequately alleged under Maryland law.

As to Count IV, Maryland law recognizes intentional interference with contractual relations where: "(1) The existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom." *Blondell v. Littlepage*, 968 A.2d 678, 696 (Md. Ct. Spec. App. 2009) (quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 313 (Md. Ct. Spec. App. 1995) *cert. denied* 669 A.2d 1360 (1996)). Relatedly, as to Count V, Maryland law authorizes a claim of intentional interference where a plaintiff alleges: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and loss

19

resulting." *Berlyn, Inc. v. Gazette Newspapers*, 223 F. Supp. 2d 718, 741 (D. Md. 2002) *aff'd* 73 F. App'x 576 (2003). 3H Medical has sufficiently alleged that it had a contractual relationship with Amazon of which KT Health was aware because KT Health intentionally submitted an infringement claim to Amazon requesting removal of 3H Medical's listings. (ECF No. 4-1 ¶¶ 1, 6–7, 53–58.) Additionally, it has alleged that this claim was unjustified because KT Health knew its '344 Patent was invalid due to its failure to disclose that 3H Medical employees were at least co-inventors. (*Id.* ¶¶ 2, 47, 53–54.) Finally, 3H Medical has alleged that Amazon removed its listings and required it to remove inventory from Amazon warehouses, which caused monetary damage. (*Id.* ¶¶ 54–57.)

Count VI is also adequately alleged under Maryland law. As Judge Bredar of this Court recently recognized, "because the scope of the tort of unfair competition under Maryland common law is extremely broad, '[t]here are no specific elements required to establish unfair competition under Maryland law." *G.W. Aru, LLC v. W.R. Grace & Co.-Conn.*, 344 F.R.D. 446, 450 (D. Md. 2023) (quoting *LSR, Inc. v. Satellite Rests., Inc. Crabcake Factory USA*, Civ. No. SAG-17-3722, 2020 WL 4903902, at *6 (D. Md. Aug. 20, 2020)). Thus, courts look to the "particular facts and circumstances" of a given case to determine whether a claim for unfair competition is sufficiently alleged. *Id.* (quoting *Balt. Bedding Corp. v. Moses*, 34 A.2d 338, 342 (Md. 1943)). 3H Medical has sufficiently alleged unfair competition by alleging that Mr. Quinn and KT Health knowingly patented designs and products without informing USPTO of 3H Medical's co-inventorship and then used one of those patents to exclude 3H Medical from the Amazon marketplace. *See, e.g., Trimmed Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 891 (4th Cir. 1992) (affirming use of jury instruction that listed exclusion from marketplace among

examples of unfair competition).  For the reasons stated on the record and elaborated above, Defendant's Motion is DENIED as to the claims in Counts IV, V, and VI.

## II.    Plaintiff's Motion for Preliminary Injunction (ECF No. 7)

As both parties acknowledged in their briefing and on the record, 3H Medical's Motion for Preliminary Injunction (ECF No. 7) relates solely to its claim of invalidity as to the '344 Patent under Count I.  In its Motion for Preliminary Injunction, 3H Medical frames this claim as resting on the theory that the '344 Patent is invalid as anticipated by prior art.  (ECF No. 7 at 14–31.)  In short, 3H Medical asserts that the '344 Patent cannot claim priority to the '355 Application filed in 2009 such that it is only entitled to claim the effective date of its application (the '581 Application), which was filed on April 25, 2022.  Under this theory, any publication before 2021 of the design claimed in the '344 Patent would constitute invalidating prior art.

As noted above, a party is entitled to injunctive relief only if it satisfies the four requirements elucidated in the *Winter* case, including a demonstration of a likelihood of success on the merits.  *See Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 747 (D. Md. 2020).  An issued patent is presumed valid, and the party challenging a patent must prove invalidity by clear and convincing evidence.  *PowerOasis, Inc.*, 522 F.3d at 1303, 1305.  At the preliminary injunction stage, however, "[t]he burden on the accused infringer to show a substantial question of invalidity . . . is lower than [that] required to prove invalidity at trial."  *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017) (quoting *Altana Pharam AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1006 (Fed. Cir. 2009)).  "Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial."  *Id.* (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001)).  Although 3H Medical has

adequately alleged invalidity as to all patents in Count I, it has not met its burden to demonstrate a likelihood of success on the merits of its claim that the '344 Patent is invalid as anticipated by prior art.

As noted above, to prove a patent invalid by prior art, a plaintiff must show (1) prior art disclosed "each and every limitation of the claimed invention"; and (2) the patent's effective date or priority date is more than one year after the prior art was publicly available.  *See Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *Hoover Grp. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995).  Although continuing-in-part ("CIP") applications may claim priority to an earlier application, "[o]nly the claims that were adequately disclosed in the parent patent receive the benefit of the parent patent's filing date, while any claim that 'recites a feature which was first introduced in the continuation-in-part application and was not adequately disclosed in the parent application . . . is not entitled to the filing date of the parent application.'"  *Asghari-Kamrani v. United Servs. Automobile Ass'n*, 252 F. Supp. 3d 562, 576 (E.D. Va. 2017) (quoting *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1575 (Fed. Cir. 1996)).  Thus, priority date "is assessed on a claim-by-claim basis."  *Iancu*, 904 F.3d at 1383 (citing *Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 557 n.6 (Fed. Cir. 1994).

Crucially, "[p]atent claims 'are not entitled to an earlier priority date merely because the patentee claims priority.'"  *Id.* at 1380 (quoting *In re NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2018)).  "Accordingly, claims in a patent or patent application are not entitled to priority under [35 U.S.C.] § 120 at least until the patent owner *proves* entitlement to the PTO, the Board, or a federal court."  *Id.* (citation omitted).  That is, there is no presumption that the patentee's

claimed priority date is correct *unless and until* the Court, USPTO, or Patent Trial and Appeal Board has fully considered the priority date in light of the alleged prior publications. *PowerOasis, Inc.*, 522 F.3d at 1305–06; *see also Iancu*, 904 F.3d at 1380 (collecting cases). Absent such determination, the patentee bears the burden to produce evidence of entitlement to the earlier priority date. *PowerOasis, Inc.*, 522 F.3d at 1305–06. "When the underlying facts are undisputed, priority date determination is purely a legal question." *Iancu*, 904 F.3d at 1379.

Although 3H Medical has adequately alleged invalidity by prior art as to the '344 Patent, it has not met the substantially higher burden to show that it is likely to succeed on the merits of this claim. As an initial matter, KT Health has offered some evidence that the '344 Patent claims may be amended such that the '344 Patent could claim priority to the '355 Application filed in 2009, which would seem to affect 3H Medical's claims of invalidating prior art. As explained on the record, the Court does not assign great weight to this evidence because it was offered for the first time at the hearing with some dispute as to its procedural import in this litigation and in the reexamination itself. More importantly, however, 3H Medical has not shown that it is likely to show the '344 Patent is vulnerable to invalidation by prior art. As 3H Medical acknowledged in its filings, the *ex parte* reexamination proceeding rejected the claim in the '344 Patent on a basis not discussed by either party in this action. (ECF No. 32 at 2.) Certainly, the results of the *ex parte* reexamination suggest some susceptibility to prior art, but those proceedings are ongoing, subject to different burdens of proof, and not binding on this Court at this stage. *Cf. Fresenius USA, Inc. v. Baxter International, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013) (concluding finally reviewed USPTO determination is binding on pending patent

litigation).  Thus, for the reasons stated on the record 3H Medical has not shown at this preliminary stage that it is likely to succeed in proving the '344 Patent invalid by prior art.[12]

3H Medical relies heavily on an unpublished decision of the U.S. District Court for the Eastern District of Virginia, which granted a temporary restraining order based on a challenge to a patent due to invalidating prior art.  *See Yangzhou Ciyang Craft Prods. Co., Ltd. v. Shengzhou Yuneng Trade Dep't*, Civ. No. 1:25-cv-83, 2025 WL 510237 (E.D.V.A. Feb. 14, 2025).   In that case, the Eastern District of Virginia determined that the plaintiff had shown a likelihood of success on the merits by establishing a "substantial question as to the validity of the" challenged patent because it asserted the patent was "invalid under Section 103 because the listed inventor . . . is *not* the inventor, and the design was publicly available prior to the Patent's issuance date."  *Id.* at *3.  Significantly, that case did not appear to involve *any* dispute as to the appropriate priority date for the challenged patent.  Rather, the Eastern District of Virginia reasoned, without any discussion of priority, that the relevant patent application was squarely anticipated by prior art.  *See id.*  Accordingly, that case is wholly distinguishable from the challenge to the '344 Patent, which hinges on the legally complex inquiry of the '344 Patent's correct priority date. For the reasons stated on the record and explained above, 3H Medical has failed to demonstrate a likelihood of success on the merits as to its claim of invalidity of

---

[12] The Court notes that the remaining *Winter* factors do not heavily favor injunctive relief at this stage.  Certainly, 3H Medical has demonstrated some irreparable harm in the form of lost customer goodwill.  (ECF No. 7-22 ¶¶ 15–16.); *see Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013).  Even so, the public interest and balance of equities do not strongly favor either party.  Although a preliminary injunction could prevent further harm to 3H Medical from accusations of infringement, it also could harm KT Health by disrupting its right of exclusivity during the patent period if the '344 Patent is ultimately deemed valid.  Relatedly, the public interest favors both "full and free competition in the use of ideas which are in reality a part of the public domain," *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969), and "the enforcement of valid patents," *Impax Lab'ys, Inc. v. Aventis Pharms., Inc.*, 235 F. Supp. 2d 390, 396 (D. Del. 2002) (quoting *Corning Glass Works v. Sumitomo Elec. USA, Inc.*, 674 F. Supp. 1074 (S.D.N.Y. 1987)).

the '344 Patent based on prior art under 35 U.S.C. § 102.  Accordingly, Plaintiff's Motion for Preliminary Injunction (ECF No. 7) is DENIED.[13]

### CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 11) is GRANTED IN PART and DENIED IN PART.  Specifically, Defendant's Motion is DENIED as to Counts I, III, IV, V, and VI, and GRANTED as to Count II, which is DISMISSED WITHOUT PREJUDICE and with leave to amend within twenty-one days of the date of this Memorandum Opinion and Order.  Plaintiff's Motion for Preliminary Injunction (ECF No. 7) is DENIED.

A separate Order follows.[14]

Date: August 21, 2025

/s/
_____
Richard D. Bennett
United States Senior District Judge

---

[13]  As explained on the record, the Court also questions the scope of the proposed preliminary injunction, which seeks to require KT Health to publicly withdraw allegations of infringement against 3H Medical.  As discussed on the record, the injunction also appears to seek relief that available only from Amazon, which is not a named party to this litigation.  The Fourth Circuit and this Court have "recognized limitations on [courts'] ability to bind non-parties with injunction."  *Little v. Assoc. Tech. Training Servs., Inc.*, 12 F.3d 205 (Table), 1993 WL 498282, at *4 (4th Cir. 1993); *see also R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 971 (4th Cir. 1999) (determining injunction was not enforceable against nonparty not in privity with party to the action); *Nat'l Assoc. of Div. Offs. In Higher Educ. v. Trump*, 768 F. Supp. 3d 735, 739–40 (D. Md. 2025) (reviewing caselaw regarding injunctions applicable to nonparties).

[14]  Additionally, as stated on the record, the Court will docket a separate Letter Order regarding filing deadlines in this matter.